IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES, for the use and benefit of, MPI MECHANICAL, INC., a corporation of the State of Delaware, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| WESTCHESTER FIRE INSURANCE COMPANY, a corporation of the State of New York, | : : : : | C.A. Number: |
| Defendant. | : : : : | JURY TRIAL DEMANDED |
| MPI MECHANICAL, INC., a corporation of the State of Delaware, | : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| MIG ENVIRONMENTAL, a corporation of the State of Delaware, | : : : : | |
| and | : : | |
| HIRANI ENGINEERING AND LAND SURVEYING, P.C., a corporation of the State of New York, | : : : : | |
| Defendants. | : : | |

## **COMPLAINT**

Plaintiff, the United States, for the use and benefit of MPI Mechanical, Inc., by and through

its undersigned counsel, hereby files this Complaint against Defendant, Westchester Fire Insurance

1

Company ("Westchester"). MPI Mechanical, Inc. ("MPI"), by and through its undersigned counsel, hereby files this Complaint against Defendants, MIG Environmental ("MIG"), and Hirani Engineering and Land Surveying, P.C. ("Hirani Engineering"). In support of thereof, Plaintiffs aver as follows:

## I.    THE PARTIES

1.    Plaintiff MPI is a Delaware corporation with its principal place of business located at 11 McMillan Way, Newark, Delaware 19713.

2.    Defendant MIG is a Delaware corporation with its principal place of business located at 1624 Newport Gap Pike, Wilmington, Delaware 19808.

3.    Jim Hirani is the president and sole owner of Defendant Hirani Engineering.

4.    Defendant Hirani Engineering is a New York corporation with its principal place of business located at 30 Jericho Executive Plaza, Suite 200C, Jericho, New York 11753.

5.    Defendant Westchester is a New York corporation with its principal place of business located at 140 Broadway, New York, New York 10005.

## II.    JURISDICTION AND VENUE

6.    This Court has jurisdiction pursuant to 40 U.S.C §§ 3131, 3133, *et. seq.* (formerly cited as 40 U.S.C. § 270, *et. seq.*), known as the Miller Act (hereinafter, the "Miller Act").

7.    The Miller Act requires that all prime contractors on federally-funded construction projects have payment and performance bonds in place to secure the work performed and the material provided on such projects.

8.    The Miller Act provides that a civil action brought under this Act must be brought in the name of the United States for the use of the person bringing the action and in the United States

District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy. 40 U.S.C §3133(b)(3).

9.    The present action is based, in part, upon the claim of a subcontractor, MPI, against the surety for the prime contractor, Hirani Engineering, for monies owed to MPI for work performed at a federally-funded construction project located in Delaware City, Delaware.

10.    This Court has jurisdiction over the remaining claims contained herein pursuant to 28 U.S.C. §1367(a), which states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

11.    The remaining claims of the present action relate to MPI's claims associated with the federally-funded construction project that is the subject of MPI's Miller Act claim.

## III.    **THE PROJECT**

12.    The Standard Chlorine of Delaware Site is an inactive chemical manufacturing plant located in Delaware City, New Castle County, Delaware and is currently operated by the Environmental Protection Agency and the Delaware Department of Natural Resources and Environmental Control.

13.    In or about January 2004, the Environmental Protection Agency and the Delaware Department of Natural Resources and Environmental Control engaged Black & Veatch Special Projects Corp. ("Black & Veatch") to perform a comprehensive environmental cleanup of the Standard Chlorine of Delaware Site (the "Project").

14.    In or about August 2006, Black & Veatch entered into an agreement with Defendant, Hirani Engineering, under which Hirani Engineering would perform certain environmental

3

remediation work at the Project. Specifically, Hirani Engineering was to construct six water extraction wells and a filter building for groundwater treatment.

15.     Defendant, Westchester, issued payment bond number K07284937, naming Hirani Engineering as principal, to ensure payment to entities supplying labor or materials used in the performance of Hirani Engineering's work at the Project (the "Payment Bond"). A true and correct copy of the Payment Bond is attached hereto as Exhibit A.

16.     In or about September 2006, Hirani Engineering entered into an agreement with Defendant, MIG, under which MIG would act as a subcontractor to Hirani Engineering to perform a certain portion of Hirani Engineering's scope of work at the Project. Specifically, MIG was responsible for constructing the conveyance piping between the six water extraction wells and the filter building.

## III.    WORK PERFORMED BY MPI AS A SUBCONTRACTOR TO MIG

17.     In or about October 2006, MIG contacted MPI and requested that MPI provide estimates to perform certain plumbing and mechanical work on the conveyance piping portion of the Project.

18.     MIG and MPI entered into an agreement (the "MIG Agreement") under which MPI would provide process piping and mechanical work at the Project in exchange for payment from MIG. A true and correct copy of the purchase order evidencing MIG Agreement is attached hereto as Exhibit B.

19.     By way of the MIG Agreement, MPI became a potential claimant under the Payment Bond.

4

20.    Pursuant to the terms of the MIG Agreement, MPI would perform its work at the Project on a time and material basis, and would submit periodic invoices to MIG for payment.

21.    MPI commenced work under the MIG Agreement on or about January 22, 2007.

22.    In or about June 2007, MPI satisfactorily completed its work under the MIG Agreement.

23.    As MPI performed work at the Project under the MIG Agreement, MPI submitted periodic invoices to MIG. To date, MPI has submitted invoices totaling $205,428.92 to MIG for MPI's work on the Project under the MIG Agreement.

24.    MIG has paid to MPI the sum of only $70,000.00 for MPI's work at the Project, whereupon, there is due, owing and payable from MIG to MPI the amount of $135,428.92.

25.    Despite several demands, MIG has failed and refused to remit payments to MPI for the work it performed on the Project under the MIG Agreement; and, as a result, MPI has sustained damages in excess of $135,428.92.

## IV.    WORK PERFORMED BY MPI AT THE REQUEST AND DIRECTION OF HIRANI ENGINEERING

26.    During the course of MPI's work at the Project, Hirani Engineering directly contacted MPI and requested that MPI submit an estimate to perform certain mechanical and plumbing work in the filter building at the Project.

27.    MPI specifically requested that Hirani Engineering provide Project drawings detailing precisely the scope of process piping work for which MPI would be submitting an estimate.

28.    In response to MPI's request to Hirani Engineering for Project drawings, MPI was contacted by Jim Hirani. In order to induce MPI to prepare the estimates for Hirani Engineering, Jim

Hirani provided MPI with Project drawings which set forth the scope of work that MPI would be estimating.

29.    The Project drawings provided by Jim Hirani to MPI are marked as having been prepared by MIG Construction, LLC.

30.    MIG Construction, LLC does not exist as a registered entity in any state.

31.    Upon information and belief, the Project drawings provided by Jim Hirani to MPI were not prepared by MIG Construction, LLC. No such entity exists. Rather, the Project drawings provided by Jim Hirani to MPI were prepared by Jim Hirani or his agents.

32.    At the time that Jim Hirani provided the MIG Construction, LLC drawings to MPI, Project drawings that had been prepared by Hirani Engineering were available. However, Jim Hirani purposefully did not provide MPI with the Project drawings prepared by Hirani Engineering.

33.    The Project drawings provided to MPI by Jim Hirani were inaccurate in that they identified a smaller scope of work than the Project drawings prepared by Hirani Engineering.

34.    MPI prepared a cost estimate in the amount of $168,800 for the Project work identified in the erroneous drawings provided by Jim Hirani and Hirani Engineering. True and correct copies of the three purchase orders comprising MPI's estimate are attached hereto as Exhibit C.

35.    Hirani Engineering accepted the estimate prepared by MPI. Accordingly, MPI and Hirani Engineering entered into a contractual agreement (the "Hirani Agreement") whereby MPI would complete the scope of work set forth in the drawings provided by Jim Hirani (the "Base Scope of Work") in exchange for payment of $168,800.

36.    MPI commenced work under the Hirani Agreement on or about March 27, 2007.

37.    During the course of MPI's work under the Hirani Agreement, it became evident that the scope of work identified on the drawings provided by Jim Hirani and Hirani Engineering was erroneous and that significant work beyond MPI's Base Scope of Work was necessary.

38.    Hirani Engineering directed MPI to perform work that was beyond the scope of the Hirani Agreement and represented to MPI that it would be paid for performing this extra work.

39.    MPI and Hirani Engineering agreed that Hirani Engineering would compensate MPI for the extra work on a time and material basis.

40.    Hirani Engineering signed time and material slips for the extra work that it requested MPI to perform.

41.    By way of time and material slips approved by Hirani Engineering, the original Hirani Agreement sum was increased by $238,089.93, to a total of $406,889.93.

42.    In or about July 2007, MPI satisfactorily completed its work in accordance with the Hirani Agreement.

43.    As MPI performed work under the Hirani Agreement, MPI submitted periodic invoices to Hirani Engineering. To date, MPI has submitted invoices totaling $406,889.93 to Hirani Engineering.

44.    Hirani Engineering has paid to MPI the sum of only $135,716.82 for MPI's work at the Project, whereupon, there is due, owing and payable from Hirani Engineering to MPI the amount of $271,173.11.

45.    Despite several demands, Hirani Engineering has failed and refused to remit payments to MPI for the work it performed under the Hirani Agreement; and, as a result, MPI has sustained damages in excess of $271,173.11.

7

## V.    BOND CLAIM

46.    On or about July 23, 2007 and pursuant to the terms of the Payment Bond, MPI provided notice to Westchester of Hirani Engineering and MIG's failure to pay MPI for work performed at the Project.

47.    Despite receiving proper notice pursuant to the terms of the Payment Bond, Westchester has failed to compensate MPI for the financial losses it suffered as a result of MIG and Hirani Engineering's failure and refusal to pay for work performed by MPI at the Project.

48.    All conditions precedent to bringing this suit have either been met by MPI or have been waived by Defendants.

**COUNT I**
**Plaintiff v. Westchester**
**Breach of Payment Bond Obligation**

49.    MPI incorporates the averments contained in Paragraphs 1 through 48 as if set forth herein at length.

50.    Defendant, Westchester, issued payment bond number K07284937 naming Hirani Engineering as principal to ensure payment to entities supplying labor or materials used in the performance of Hirani Engineering's work at the Project.

51.    MPI has performed all of its obligations under the MIG Agreement and the Hirani Agreement in a timely and professional manner.

52.    As set forth more fully above, Hirani Engineering and its subcontractor, MIG, breached the payment terms of their respective agreements with MPI.

53.    The total balance due and owing to MPI for work performed at the Project is $406,602.03.

54.    On or about July 23, 2007, MPI notified Westchester that its bond principal, Hirani Engineering, and Hirani Engineering's subcontractor, MIG, were in default of their payment obligations to MPI. A true and correct copy of MPI's July 23, 2007 notice to Westchester is attached hereto as Exhibit D.

55.    Pursuant to the Miller Act, on or about August 21, 2007, MPI notified Hirani Engineering of the outstanding balance due to MPI for work performed at the Project under the direction of Hirani Engineering and its subcontractor, MIG. A true and correct copy of MPI's August 21, 2007 notice to Hirani Engineering is attached hereto as Exhibit E.

56.    Pursuant to the Miller Act, as well as the Payment Bond issued by Westchester, Westchester must remit payment to MPI.

57.    Despite notice, Westchester has failed to compensate MPI for the financial losses MPI suffered as a result of Hirani Engineering and MIG's breaches of contract.

58.    Pursuant to the Payment Bond, Westchester is obligated to compensate MPI for the cost of labor and materials supplied by MPI to the Project.

59.    By letter dated September 7, 2007, MPI notified Westchester that Westchester had breached its obligations under the Payment Bond. A true and copy of MPI's September 7, 2007 letter to Westchester is attached hereto as Exhibit F.

60.    All conditions precedent to coverage under the Payment Bond have been satisfied and all proper notices regarding Hirani Engineering and MIG's default were provided to Westchester as required by the Payment Bond.

61.    Despite notice, Westchester has failed and/or refused to fulfill its obligations under the Payment Bond.

62.     Westchester is liable for MPI's damages as set forth above in accordance with the Payment Bond.

WHEREFORE, Plaintiff United States, for the use and benefit of, MPI demands judgment against Defendant Westchester in an amount in excess of $406,602.03, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

## COUNT II
### Plaintiff v. Hirani Engineering
### Breach of Contract

63.     MPI incorporates the averments contained in Paragraphs 1 through 62 as if set forth herein at length.

64.     Pursuant to its agreement with MPI, Hirani Engineering agreed to timely pay for all amounts due and owing to MPI for the work and services performed on the Project.

65.     Despite MPI fulfilling all of its obligations under its agreement with Hirani Engineering and performing additional work as requested in a timely and professional manner, Hirani Engineering has failed and/or refused to remit the contract balance due and owing to MPI in the sum of $271,173.11.

66.     MPI has requested payments of this sum from Hirani Engineering and has satisfied any necessary conditions precedent to the filing of this Complaint.

67.     Hirani Engineering has wrongly failed and refused to make payments due and owing to MPI in an amount in excess of $271,173.11.

68.     Hirani Engineering's failure to pay MPI the monies due and owing to it is a material breach of its agreement with MPI.

10

69.    As a direct and proximate result of Hirani Engineering's breach of its agreement with MPI, MPI has been damaged in excess of $271,173.11.

WHEREFORE, Plaintiff MPI demands judgment against Defendant Hirani Engineering in an amount in excess of $271,173.11, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

### COUNT III
### Plaintiff v. MIG
### Breach of Contract

70.    MPI incorporates the averments contained in Paragraphs 1 through 69 as if set forth herein at length.

71.    Pursuant to the MIG Agreement, MIG agreed to timely pay for all amounts due and owing to MPI for the work and services performed on the Project.

72.    Despite MPI fulfilling all of its obligations under the MIG Agreement and performing additional work as requested in a timely and professional manner, MIG has failed and/or refused to remit the contract balance due and owing to MPI in the sum of $135,428.92.

73.    MPI has requested payments of this sum from MIG and has satisfied any necessary conditions precedent to the filing of this Complaint.

74.    MIG has wrongly failed and refused to make payments due and owing to MPI in an amount in excess of $135,428.92.

75.    MIG's failure to pay MPI the monies due and owing to it is a material breach of its Agreement with MPI.

76.    As a direct and proximate result of MIG's breach of the MIG Agreement, MPI has been damaged in excess of $135,428.92.

11

WHEREFORE, Plaintiff MPI demands judgment against Defendant MIG in an amount in excess of $135,428.92, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

### COUNT IV
### Plaintiff v. Hirani Engineering
### Unjust Enrichment

77.    MPI incorporates the averments contained in Paragraphs 1 through 76 as if set forth herein at length.

78.    MPI provided material and performed services on the Project for the benefit of Hirani Engineering fully expecting compensation for such services and materials.

79.    Hirani Engineering accepted the materials and services provided by MPI and has enjoyed the benefit and use of the materials and services provided by MPI.

80.    Hirani Engineering's retention of the benefit of the use of the materials and services provided by MPI without compensating MPI for such materials and services would be unjust.

81.    The amount invoiced by MPI pursuant to its agreement with Hirani Engineering is fair and reasonable.

82.    The reasonable value of services and materials provided to Hirani Engineering for which MPI has not received payment is in excess of $271,173.11.

WHEREFORE, Plaintiff MPI demands judgment against Defendant Hirani Engineering in an amount in excess of $271,173.11, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

12

## COUNT V
### Plaintiff v. MIG
### Unjust Enrichment

83.     MPI incorporates the averments contained in Paragraphs 1 through 82 as if set forth herein at length.

84.     MPI provided material and performed services on the Project for the benefit of MIG fully expecting compensation for such services and materials.

85.     MIG accepted the materials and services provided by MPI and has enjoyed the benefit and use of the materials and services provided by MPI.

86.     MIG's retention of the benefit of the use of the materials and services provided by MPI without compensating MPI for such materials and services would be unjust.

87.     The amount invoiced by MPI pursuant to the Agreement and requested in approved change orders is fair and reasonable.

88.     The reasonable value of services and materials provided to MIG for which MPI has not received payment is in excess of $135,428.92.

WHEREFORE, Plaintiff MPI demands judgment against Defendant MIG in an amount in excess of $135,428.92, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

## COUNT VI
### Plaintiff v. Hirani Engineering
### *Quantum Meruit*

89.     MPI incorporates the averments contained in Paragraphs 1 through 88 as if set forth herein at length.

13

90.    MPI is entitled to the *quantum meruit* value of the materials and services provided to Hirani Engineering on the Project.

91.    The *quantum meruit* value of the materials and services provided to Hirani Engineering by MPI for which MPI remains unpaid is in excess of $271,173.11.

WHEREFORE, Plaintiff MPI demands judgment against Defendant Hirani Engineering in an amount in excess of $271,173.11, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

**COUNT VII**
**Plaintiff v. MIG**
***Quantum Meruit***

92.    MPI incorporates the averments contained in Paragraphs 1 through 91 as if set forth herein at length.

93.    MPI is entitled to the *quantum meruit* value of the materials and services provided to MIG on the Project.

94.    The *quantum meruit* value of the materials and services provided to MIG by MPI for which MPI remains unpaid is in excess of $135,428.92.

WHEREFORE, Plaintiff MPI demands judgment against Defendant MIG in an amount in excess of $135,428.92, together with costs of suit, attorneys' fees and such other relief as this Honorable Court deems just and proper.

## COUNT VII
### Plaintiff v. Hirani Engineering
### Breach of the Delaware Prompt Pay Act
### 6 DEL.C. §3501, *et seq.*

95.    MPI incorporates the averments contained in Paragraphs 1 through 94 as if set forth herein at length.

96.    Hirani Engineering failed to pay MPI and amount in excess of $271,173.11 for services performed and materials supplied to the Project.

97.    Hirani Engineering has received moneys or funds from Black & Veatch in connection with its contract for the erection, construction, completion, alternation or repair of the building or addition in connection with the Project.

98.    All monies and funds received by Hirani Engineering are impressed with trust pursuant to by 6 Del.C. §3502.

99.    Hirani Engineering has not first applied such funds to the payment of the full amount of monies owed to MPI, as such, the pay out, use or appropriation of such monies or funds by Hirani Engineering was and is prohibited by 6 Del.C. §3503.

100.    MPI has submitted invoices throughout the course of the Project and submitted a final invoice when the work was fully completed.  Hirani Engineering has not disputed the amounts invoiced by MPI and has failed to make payment.

101.    Hirani Engineering's withholding of payment due and owing to MPI has not been made in good faith or with reasonable cause.

102.    Hirani Engineering is liable to MPI for penalties pursuant to 6 Del.C. §3505 and interest and attorneys' fees pursuant to 6 Del.C. §3506 and §3509.

WHEREFORE, Plaintiff MPI respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Hirani Engineering and award MPI an amount in excess of $271,173.11, plus penalties pursuant to 6 Del.C. §3505, pre- and post-judgment interest pursuant to 6 Del.C. §3506, counsel fees pursuant to 6 Del.C. §§3506, 3509, costs of suit and such other relief as this Honorable Court deems just and proper.

### COUNT IX
**Plaintiff v. MIG**
**Breach of the Delaware Prompt Pay Act**
**6 DEL.C. §3501, *et seq.***

103.    MPI incorporates the averments contained in Paragraphs 1 through 102 as if set forth herein at length.

104.    MIG failed to pay MPI an amount in excess of $135,428.92 for services performed and materials supplied to the Project.

105.    MIG has received moneys or funds from Hirani Engineering and/or Black & Veatch in connection with its contract for the erection, construction, completion, alternation or repair of the building or addition in connection with the Project.

106.    All monies and funds received by MIG are impressed with trust pursuant to by 6 Del.C. §3502.

107.    MIG has not first applied such funds to the payment of the full amount of monies owed to MPI, as such, the pay out, use or appropriation of such monies or funds by MIG was and is prohibited by 6 Del.C. §3503.

16

108.    MPI has submitted invoices throughout the course of the Project and submitted a final invoice when the work was fully completed.  MIG has not disputed the amounts invoiced by MPI and has failed to make payment.

109.    MIG's withholding of payment due and owing to MPI has not been made in good faith or with reasonable cause.

110.    MIG is liable to MPI for penalties pursuant to 6 Del.C. §3505 and interest and attorneys' fees pursuant to 6 Del.C. §3506 and §3509.

WHEREFORE, Plaintiff MPI respectfully requests that this Honorable Court enter judgment in its favor and against Defendant MIG and award MPI an amount in excess of $135,428.92, plus penalties pursuant to 6 Del.C. §3505, pre- and post-judgment interest pursuant to 6 Del.C. §3506, counsel fees pursuant to 6 Del.C. §§3506, 3509, costs of suit and such other relief as this Honorable Court deems just and proper.


COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.

Edward Seglias, Esquire
1007 North Orange Street, Suite 1103
Nemours Building
Wilmington, DE 19801
(302) 425-5089
*Attorneys for Plaintiff*

DATED:    9/7/07

17

# EXHIBIT A

Bond No. K07284937

Construction Payment Bond

Any singular reference to Subcontractor, Surety, Contractor or other party shall be considered plural where applicable.

SUBCONTRACTOR (Name and Address):
Hirani Engineering & Land Surveying, PC
370 Campus Drive, Suite 113A
Somerset, NJ 08873

SURETY [Name and Principal place of Business):
Westchester Fire Insurance Company
140 Broadway
New York, NY 10005

215-640-1000
878-795-4000
800-292-3776
KAREN
4/13/0
NO

CONTRACTOR:
Black & Veatch Special Projects Corp.
6601 College Blvd.
Overland Park, Kansas 66211

CONSTRUCTION SUBCONTRACT
Date:   8/15/06
Amount: $2,218,550.00
Modifications to this Bond Form:          N/A

Standard Chlorine of Delaware Site – Groundwater Extraction & Treatment System

BOND
Date (Not earlier than Construction Subcontract Date):          8/29/06
Amount: $2,218,550.00
Modifications to this Bond Form:   N/A

SUBCONTRACTOR AS PRINCIPAL
Company: Hirani Engineering & (Corp. Seal)
         Land Surveying, PC
Signature:
Signature:
Name and Title:   DR. B.V. RAO
         EXECUTIVE VICE PRESIDENT

SURETY:
Company: Westchester Fire Insurance Company          (Corp. Seal)
Name and Title: Marisol Mojica, Attorney-In-Fact

SUBCONTRACTOR AS PRINCIPAL
Company:                        (Corp. Seal)
Signature:
Signature:
Name and Title:

SURETY:
Company:                        (Corp. Seal)

Name and Title:

Based on EJCDC No. 1910-28B (1984 Edition) With Modifications
Prepared through the joint efforts of the Surety Association of America, Engineers Joint Contract Documents Committee, the Associated General Contractors of America, American Institute of Architects, American Subcontractors Associated, and the Associated Specialty Contractors. [Reprinted 1990]

1. The Subcontractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Contractor to pay for labor, materials and equipment furnished for use in the performance of the Construction Subcontract, which is incorporated herein by reference.

2. With respect to the Contractor, this obligation shall be null and void if the Subcontractor:

   2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

   2.2 Defends, indemnifies and holds harmless the Contractor from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit if for payment for labor, materials or equipment furnished for use in the performance of the Construction Subcontract, provided the Contractor has promptly notified the Subcontractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Subcontractor and the Surety, and provided there is no Contractor Default.

3. With respect to Claimants, this obligation shall be null and void if the Subcontractor promptly makes payment, directly or indirectly, for all sums due.

4. The Surety shall have no obligation to Claimants under this Bond until:

   4.1 Claimants who are employed by or have direct contract with the Subcontractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Contractor, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

   4.2 Claimants who do not have a direct contract with the Subcontractor

   1. Have furnished written notice to the Subcontractor and sent a copy, or notice thereof, to the Contractor, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

   2. Have either received a rejection in whole or in part from the Subcontractor, or not received within 30 days of furnishing the above notice any communication from the Subcontractor by which the Subcontractor has indicated the claim will be paid directly or indirectly; and

   3. Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Contractor, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Subcontractor.

5. If a notice required by Paragraph 4 is given by the Contractor to the Subcontractor or to the Surety, that is sufficient compliance.

6. When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

   6.1 Send an answer to the Claimant, with a copy to the Contractor, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

   6.2 Pay or arrange for payment of any undisputed amounts.

7. The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8. Amounts owed by the Contractor to the Subcontractor under the Construction Subcontract shall be used for the performance of the Construction Subcontract and to satisfy claims, if any, under any Construction Performance Bond.   By the Subcontractor furnishing and the Contractor accepting this Bond, they agree that all funds earned by the Subcontractor in the performance of the Construction Subcontract are dedicated to satisfy obligations of the Subcontractor and the Surety under this Bond, subject to the Contractor's priority to use the funds for the completion of the work.

9. The Surety shall not be liable to the Contractor, Claimants or others for obligations of the Subcontractor that are unrelated to the Construction Subcontract. The Contractor shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10. The Surety hereby waives notice of any change, including changes of time, to the Construction Subcontract or to related subcontracts, purchase orders and other obligations.

11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or clause 4.2 (item 3), or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Subcontract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12. Notice to the Surety, the Contractor or the Subcontractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Contractor or the Subcontractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14. Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Subcontractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15. DEFINITIONS

   15.1 Claimant: An individual or entity having a direct contract with the Subcontractor or with a subcontractor of the Subcontractor to furnish labor, materials or equipment for use in the performance of the Subcontract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Subcontract, architectural and engineering services required for performance of the work of the Subcontractor and Subcontractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

   15.2 Construction Subcontract: The agreement between the Contractor and the Subcontractor identified on the signature page, including all Subcontract Documents and changes thereto.

   15.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to pay the Subcontractor as required by the Construction Subcontract or to perform and complete or comply with the other terms thereof.

Based on EJCDC No. 1910-28B (1984 Edition) With Modifications
Prepared through the joint efforts of the Surety Association of America, Engineers Joint Contract Documents Committee, the Associated General Contractors of America, American Institute of Architects, American Subcontractors Associated, and the Associated Specialty Contractors. (Reprinted 10/90)

# EXHIBIT B

Purchase Order Number: _6012_

**MIG Environmental**
**1624 Newport Gap Pike**
**Wilmington DE 19808**
**(302) 999-1888**
**Fax 999-0012**
**www.migenvironmental.net**

# PURCHASE ORDER

Date: _3-26-2007_

Vendor and Address: _MPI_

_____

_____

| **Item** | **Quantity** | **Unit** | **Description** | **Price** |
|---|---|---|---|---|
| Time/material | | | Standard Chlorine | |

Job Costing: _____

Authorized by: _IP Singh_

Purchase Order number: _6012_

# EXHIBIT C

**HIRANI ENGINEERING AND
LAND SURVEYING, P.C.**

PURCHASE ORDER # 106

370 Campus Drive
Suite 113A
Somerset, NJ 08873
(732) 564-0164     Fax- (732) 564-0167

To: Richard Menton
MPI Mechanical
11 McMillan way
Newark, DE 19713
Phone: (302)368-3210
Fax: (302)737-8412

Date: 02/27/07
Project:  Standard Chlorine of Delaware,
New Castle, DE

| WORK AT | BILL TO |
|---|---|
| 745 Governor Lea Road<br>New Castle, DE 19720 | Hirani Engineering &<br>Land Surveying, P.C.<br>370 Campus Drive<br>Somerset, NJ 08873 |

TERMS: Five (5) business days of receipt of payment from the Project Owner/Client to Hirani
Engineering and Land Surveying, P.C.

**DESCRIPTION:**
-40 hour trained crew, respirator qualified, drug testing required
-Vapor meter and technician to check atmosphere and soil
-Prepared for level C (suits, boots, respirators) if needed.
-Excavate and if soil is contaminated, stockpile separately from non contaminated soil
-Silt fence around pile, seed and mulch
-Spread non contaminated soil around the trench
-Furnish and Install approx. 1200 LF DIP, 4", class 350, NSF + approx. 200lf of 3" DIP to
building stub
-Buy America for pipe, fittings and other material
-Restrained joints at all changes in direction
-Traffic control at tie in point in Governor Lea Road
-Saw cut pavement for hole for wet tap, if required
-Compact backfill to 95% proctor, patch pavement, if required
-Wet tap from main road and coordinate with Water Company.
-Obtain permits as required, United Water
-Correspondence with Miss Utility
-Install 3" meter provided by Water Company
-Provide and install backflow preventer
-Install meter and backflow preventer above ground, similar to existing 10 inch line
-Heat trace and shed for meter and backflow preventer
-Underground line to hydrant by building
-Restrained joints at changes in direction
-Sand backfill, compact to 95% proctor
-Top with 12 inches stone, such as no. 57 stone, at traffic areas, otherwise top with sand
-See drawings, for route and details

Page 1 of 4

-Pressure test for leaks
-Disinfect, if required
-Schedule: begin Mar. 5, finish Mar. 23

## TOTAL COST - $65,000

RETAINAGE PETCENTAGE: For the security of faithful performance of this contract, as per the owner, the contractor shall deduct 10% of the value of Work certified for payment to the Subcontractor in each partial payment voucher.

Note:- This is your authorization to perform the following Work (i.e. labor, materials and equipment) including shop drawings, submittal as per the plans and specifications for this contract and subject to the terms and conditions of this Purchase Order appended hereto.
This contract is a prevailing wage contract. The contract price includes payroll taxes, workmen compensation and insurance. Any expense incurred by the Prime Contractor will be deducted from the contract value.

Sub-Total: $65,000
Lump Tax: Included
Freight: Included
Total: $65,000

### TERMS AND CONDITIONS

The Subcontractors acknowledges that the work identified in this Purchase Order (the "Work") have no value to Hirani Consulting Inc. unless they content the requirements of Hirani Consulting Inc. 's agreement with the Project Owner, including the plans and specifications (Collectively, the Prime Contract), are delivered when required unless and until Hirani Consulting Inc. receives payment for the Work under the "Prime Contract". Based on these considerations, the Subcontractors accepts the following terms and conditions without qualification.

1. **ACCEPTANCE**- the Subcontractors may accept this offer only by signing and returning this Purchase Order to Hirani Consulting Inc., without modification, within three days.
2. **CANCELLATION**- Hirani Consulting Inc. may cancel this Purchase Order, without cost, if (a) Hirani Consulting Inc. is not awarded the Prime Contract, (b) the Project Owner does not approve the Subcontractors of the Work (c) the Project Owner does not approve the material (e) the Project Owner changes the system/material to be used on the project or (d) the Subcontractors fails to comply with each term of this Purchase Order. Hirani Consulting Inc. may also cancel this Purchase Order for its own convenience. In that case Hirani Consulting Inc.'s liability shall be limited to payment, at the prices set forth in this Purchase Order, for that portion of the work which had been manufactured/serviced by the date of termination and which do not constitute stock or standard items.
3. **PRIME CONTRACT**- The Prime Contract is incorporated into this Purchase Order and shall be made available, upon reasonable notice, to the Subcontractors for examination. The Subcontractors assumes toward Hirani Consulting Inc. each obligation and liability that Hirani Consulting Inc. assumes toward the Project Owner under the Prime Contract.
4. **SCHEDULE**- Times is of essence. The Subcontractors shall submit all shop drawings, site safety inspection/plan, CPM schedules, samples and product data promptly and shall obtain the required approvals at such time as will permit the Subcontractors to meet the delivery dates. All delivery dates are subject to reasonable revision by Hirani Consulting Inc., as necessary to meet the project schedule, and the Subcontractors shall meet these revised dates at no additional expense to Hirani Consulting Inc. The Subcontractors acknowledges that any delay in the performance of the Work may results in damages to Hirani Consulting Inc., including liability by Hirani Consulting Inc. to others, and agrees to compensate Hirani Consulting Inc. for all direct and consequential damages suffered as a result of the delay.
5. **CHANGES**- Hirani Consulting Inc. may change or modify the plans and specification for the Work under the Prime Contract. In the event such changes or modifications, this purchase order shall remain in full force and effect, except that it shall be adjusted in a similar manner and the Project Owner adjusts amount as the Prime Contract. This adjustment, if any, shall constitute the only compensation to the Subcontractors as a result of changes or modifications.
6. **WARRANTIES**- The Subcontractors warrants that the Work (a) Comply with all applicable requirements of the Prime Contract, (b) are free from all defects in workmanship and materials, (c) comply with all warranties imposed by law, (d) comply with all applicable laws, regulations, and codes (e) conform to all samples, shop drawings, site safety inspection/plan, CPM schedules and product data furnished by the Subcontractors, (f) are merchantable and suitable for the use contemplated by the Prime Contract and (g) if designed by the Subcontractors, are free from defects in design. The Subcontractors agrees to remedy any defect in the Work within one year from acceptance by the Project Owner, or within the applicable period established by the Prime Contract, whichever is longer. The Subcontractor's warranties shall survive acceptance of the Work and shall not be waived by any failure to notify the Subcontractors of any non-conformity.
7. **INDEMNIFICATION**- Subcontractors agrees to defend, protect, indemnify and hold harmless the Owner and Hirani Consulting Inc., their respective officers, directors, employees, agents, invitees, and servants (collectively, "Indemnities") from and against each and every claim, demand or cause of action or any liability, cost, expense (including but not limited to reasonable attorney's fees and expenses incurred in the defense of the indemnities, damage or loss in connection therewith, which may be made or asserted by the Subcontractors, Subcontractor's employees or agents, Subcontractors, their employees or agents or any third parties (including but not limited to the Indemnities) on account of personal injury or death or property damage caused by or alleged to be caused by, arising out of, or in anyway incidental to, or in connection with the performance of the Work hereunder and undertakings of the Subcontractors of all work, labor and services including the supply of materials, equipment, tools and services as provided for in the contract between Hirani Consulting Inc. and Subcontractors and the agreement between the Owner and Hirani Consulting Inc.
8. **PRICE**- The purchase price is a unit price contract and the quantities mentioned is just an approximate quantity which could change depending on the Project Owner and includes payment to the Subcontractors for all its obligations under this Purchase Order. In addition, the purchase price includes all taxes applicable to the Work.
9. **TERMS OF PAYMENT**- Payment of the Subcontractors invoices shall be made within ten (10) business days of receipt by Hirani Consulting Inc. of payment from the Project Owner/Client/Prime Contractors. Payment by the Project Owner shall be an absolute condition precedent to Hirani Consulting Inc.'s obligation to pay the Subcontractors for the Work, regardless of the length of any delay incurred while awaiting payment from the Project Owner. Prior to payment, the Subcontractors shall execute and furnish all lien waivers, affidavits and other documents required to keep the Project free from mechanic's liens or charges. Any payment discount period shall be calculated from the date when Hirani Consulting Inc. receives an acceptable invoice.
10. **INSPECTION**-Upon one day's notice to the Subcontractors, Hirani Consulting Inc. may inspect, test and take samples of the Work, wherever located.
11. **DEFAULT; REMEDIES**- If the Subcontractors breach this Purchase Order, or if the Subcontractor dissolve, is liquidated, or is placed in bankruptcy, receivership or assignment for the benefit of creditors, Hirani Consulting Inc. may without notice, declares the Subcontractors in default under this Purchase Order. Upon default, Hirani Consulting Inc. may, without notice, (a) cancel this Purchase Order without cost to Hirani Consulting Inc., (b) require that all sums owing to Hirani Consulting Inc. be immediately paid and (c) seek any other remedy available under this Purchase Order and applicable law. In any action for breach of this Purchase Order, Hirani Consulting Inc. shall be entitled to its reasonable counsel fee and expenses.
12. **NON-CONFORMING WORK**- If the work does not-conform to the terms of this Purchase Order, Hirani Consulting Inc. (a) Hold the Work for Subcontractor's instruction at Subcontractor's risk and expense (b) remedy the defects to the Work at Subcontractor's expense (c) require replacement of the Work at no additional cost or (d) sets off all costs and expenses incurred by making an equitable reduction in the price. Further, if the Subcontractors provides are conforming work or fails to perform the work, Hirani Consulting Inc. may in addition to other rights, procure the Work elsewhere. The Subcontractors shall pay any additional cost of reprocurement. If reprocurement causes direct or consequential damages to Hirani Consulting Inc., the Subcontractors shall reimburse Hirani Consulting Inc. for these damages, in all cases, the Subcontractors shall pay the costs of inspection and testing of the Work and all transportation, storage and other charges.
13. **RISK OF LOSS**- Until final acceptance of all Work Contactor shall responsible for all damages to the Work, except damage resulting from the willful acts on Hirani Consulting Inc.
14. **DISPUTES**- The Subcontractors is bound by the provisions of the Prime Contract, if any, requiring arbitration of disputes. Further, the Subcontractors agree to participate in and be bound by any arbitration under the Prime Contract. If the Prime Contract does not provide for any arbitration, or if any applicable arbitration provision has been waived, Hirani Consulting Inc. may elect, in its sole discretion, to commit disputes under this Purchase Order to arbitration, and the Subcontractors agrees to be bound by Hirani Consulting Inc.'s election and the subsequent arbitration.
15. **CUMULATIVE REMEDIES**-Hirani Consulting Inc.'s various rights and remedies under this Purchase Order and applicable law are cumulative.
16. **SETOFF**- All amounts owed to the Subcontractors by Hirani Consulting Inc. under this Purchase Order may be set-off, at Hirani Consulting Inc.'s option, against any amount otherwise owed to Hirani Consulting Inc. by the Subcontractors.
17. **COMPLIANCE WITH LAW**- The Subcontractors shall comply with all applicable provisions of federal, state, local, labor laws, payment of prevailing wages and regulations.
18. **ASSIGNMENT**-This Purchase Order may not be assigned, transferred or hypothecated by the Subcontractors without Hirani Consulting Inc.'s prior written approval.
19. **GOVERNING LAW**-This Purchase Order shall be governed by the laws of the State of New York.
20. **MODIFICATION**- This Purchase Order may not be modified orally. All modifications must be in writing and signed by Hirani Consulting Inc. and the Subcontractors.
21. **MERGER**-This Purchase Order is the complete expression of the agreement between Hirani Consulting Inc. and the Supplier. No prior statements, course of dealings, trade usage, custom, or practice shall supplement the terms this Purchase Order.
22. **INSURANCE**- Before commencing any work hereunder, Subcontractors shall procure and maintain, at its own expense, until completion of the work all the insurances as per the specifications. Before commencing the Work, the Subcontractors shall furnish a certificate, satisfactory to Hirani, from each insurance company showing that the above insurance

in force, stating policy numbers, dates of expiration, and limits of liability there under, and further providing that the insurance will not be canceled or changed until the expiration of at least thirty (30) days after written notice of such cancellation or change has been mailed to and received by Hirani. If requested by Hirani, Subcontractors shall provide proof that said insurance is paid for and full force and effect. Hirani and the Owner shall be named as additional insured under these policies of insurance. If the Subcontractors fails to maintain such insurance, Hirani shall have the right, but not the obligation, to procure and maintain such insurance for and in the name of the Subcontractors and the Subcontractors shall pay the cost thereof.

23    LOSS OR DAMAGE TO WORK- Hirani shall not be responsible for any loss or damage to the Work to performed and furnished under this Subcontractors, however caused. Hirani shall not be responsible for loss of or damage to materials, tool, equipment or any other personal property owned, rented or used by the Subcontractors or anyone employed by it in the performance of the work, however caused.

24    BACKCHARGES- Any equipment, tools, services or materials purchased by or supplied by Hirani to Subcontractors shall be charged to Subcontractors by Hirani at Hirani's cost plus a handling charge of ten percent (10%). Any trucking required for delivery or pickup of any of the above or for removal of debris or for any other reason shall be charged at the rate of $800 per trip plus a handling charge of ten percent (10%). Any labor required that is supplied by Hirani in order to complete any portion of the work or due to the failure of the Subcontractors to man the Work and adhere to the Project schedule shall be charged at Hirani's standard time and material rated plus a handling charge of ten percent (10%).Any and all equipment supplied by Hirani shall be charged to Subcontractors at Hirani's standard time and material rates plus a handling charge of ten percent (10%). If Hirani supplies any equipment to the Subcontractors; Subcontractors is required to return any such equipment in the same condition as it was delivered by Hirani. Any repairs required to said equipment upon its return, Hirani shall back charge to Subcontractors at cost plus a handling charge of ten percent (10%). Should Subcontractors receive any violations or summonses during the course of the Work. Hirani may elect to defend same at Subcontractor's expense and Subcontractors shall be responsible for the payment of any fine imposed plus actual legal costs incurred by Hirani.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the effective date of the contract first above written.

Hirani Engineering & Land Surveying, P.C.
Name:  Naresh  Ochani

Title: Project Manager

Signed: ..........................

MPI Mechanical Inc
Name: _Richard A. Weston_ Jes

Title: ...P.R.E.S.I.D.E.N.T..........

Signed: _RICHARD A. WESTON JM_

Page 3 of 4

# HIRANI ENGINEERING AND
# LAND SURVEYING, P.C.

**PURCHASE ORDER # 107**

370 Campus Drive
Suite 113A
Somerset, NJ 08873
(732) 564-0164     Fax- (732) 564-0167

To: Richard Menton
MPI Mechanical
11 McMillan way
Newark, DE 19713
Phone: (302)368-3210
Fax: (302)737-8412

Date: 02/27/07
Project: Standard Chlorine of Delaware,
New Castle, DE

| WORK AT | BILL TO |
|---|---|
| 745 Governor Lea Road<br>New Castle, DE 19720 | Hirani Engineering &<br>Land Surveying, P.C.<br>370 Campus Drive<br>Somerset, NJ 08873 |

TERMS: Five (5) business days of receipt of payment from the Project Owner/Client to Hirani
Engineering and Land Surveying, P.C.

**DESCRIPTION**
- Equipment setting, Receive, unload and install thirteen pieces of equipment in the 50 X 50 ft.
building for Standard Chlorine of Delaware project (diagram and list of equipment attached).
- Anchor equipment on the concrete floor with hilti-type anchors (SS) through pre drilled ½ inch
holes in skids.
- First truckload arrives Tuesday, Mar. 6, 2007. Coordinate with manufacturer for details of
equipment handling.
- Unload ~~and install separate truckload of carbon and green sand~~ *Ra/M 3-6-07*

## TOTAL COST - $14,100
RETAINAGE PETCENTAGE: For the security of faithful performance of this contract, as per the owner, the contractor shall deduct 10% of the
value of Work certified for payment to the Subcontractor in each partial payment voucher.
Note:- This is your authorization to perform the following Work (i.e. labor, materials and equipment) including shop drawings, submittal as per
the plans and specifications for this contract and subject to the terms and conditions of this Purchase Order appended hereto.
This contract is a prevailing wage contract. The contract price includes payroll taxes, workmen compensation and insurance. Any expense
incurred by the Prime Contractor will be deducted from the contract value.

Sub-Total: $14,100
Lump Tax: Included
Freight: Included
Total: $14,100

**TERMS AND CONDITIONS**
The Subcontractors acknowledges that the work identified in this Purchase Order (the" Work") have no value to Hirani Consulting Inc. unless they contest the requirements of Hirani Consulting
Inc. 's agreement with the Project Owner, including the plans and specifications (collectively, the Prime Contract), are delivered when required unless and until Hirani Consulting Inc. receives
payment for the Work under the "Prime Contract". Based on these considerations, the Subcontractors accepts the following terms and conditions without qualification.

1.    ACCEPTANCE- the Subcontractor may accept this offer only by signing and returning this Purchase Order to Hirani Consulting Inc., without modification, within three days.
2.    CANCELLATION- Hirani Consulting Inc. may cancel this Purchase Order, without cost, if (a) Hirani Consulting Inc. is not awarded the Prime Contract, (b) the Project Owner
does not approve the Subcontractors of the Work (c) the Project Owner does not approve the material (e) the Project Owner changes the system/material to be used on the project
or (d) the Subcontractors fails to comply with each term of this Purchase Order. Hirani Consulting Inc. may also cancel this Purchase Order for its own convenience. In that case
Hirani Consulting Inc.'s liability shall be limited to payment, at the prices set forth in this Purchase Order, for that portion of the work which had been manufactured/serviced by
the date of termination and which do not constitute stock or standard items.
3.    PRIME CONTRACT- The Prime Contract is incorporated into this Purchase Order and shall be made available, upon reasonable notice, to the Subcontractors for examination.
The Subcontractors assumes toward Hirani Consulting Inc. each obligation and liability that Hirani Consulting Inc. assumes toward the Project Owner under the Prime Contract.

Page 1 of 3

4.  SCHEDULE- Time is of essence. The Subcontractors shall submit all shop drawings, site safety inspection/plan, CPM schedules, samples and product data promptly and shall obtain the required approvals at such time as will permit the Subcontractors to meet the delivery dates. All delivery dates are subject to reasonable revision by Hirani Consulting Inc., as necessary to meet the project schedule, and the Subcontractors shall meet these revised dates at no additional expense to Hirani Consulting Inc. The Subcontractors acknowledges that any delay in the performance of the Work may results in damages to Hirani Consulting Inc., including liability by Hirani Consulting Inc. to others, and agrees to compensate Hirani Consulting Inc. for all direct and consequential damages suffered as a result of the delay.

5.  CHANGES- Hirani Consulting Inc. may change or modify the plans and specification for the Work under the Prime Contract. In the event such changes or modifications, this purchase order shall remain in full force and effect, except that it shall be adjusted in a similar manner and the Project Owner adjusts amount as the Prime Contract. This adjustment, if any, shall constitute the only compensation to the Subcontractors as a result of changes or modifications.

6.  WARRANTIES- The Subcontractors warrants that the Work (a) Comply with all applicable requirements of the Prime Contract, (b) are free from all defects in workmanship and materials, (c) comply with all warranties imposed by law, (d) comply with all applicable laws, regulations, and codes (e) conform to all samples, shop drawings, site safety inspection/plan, CPM schedules and product data furnished by the Subcontractors, (f) are merchantable and suitable for the use contemplated by the Prime Contract and (g) if designed by the Subcontractors, are free from defects in design. The Subcontractors agrees to remedy any defect in the Work within one year from acceptance by the Project Owner, or within the applicable period established by the Prime Contract, whichever is longer. The Subcontractor's warranties shall survive acceptance of the Work and shall not be waived by any failure to notify the Subcontractors of any non-conformity.

7.  INDEMNIFICATION- Subcontractors agrees to defend, protect, indemnify and hold harmless the Owner and Hirani Consulting Inc., their respective officers, directors, employees, agents, invitees, and servants (collectively, "Indemnities") from and against each and every claim, demand or cause of action or any liability, cost, expense (including but not limited to reasonable attorney's fees and expenses incurred in the defense of the indemnities, damage or loss in connection therewith, which may be made or asserted by the Subcontractors, Subcontractor's employees or agents, Subcontractors, their employees or agents or any third parties (including but not limited to the Indemnities) on account of personal injury or death or property damage caused by or alleged to be caused by, arising out of, or in anyway incidental to, or in connection with the performance of the Work hereunder and undertakings of the Subcontractors of all work, labor and services including the supply of materials, equipment, tools and services as provided for in the contract between Hirani Consulting Inc. and Subcontractors and the agreement between the Owner and Hirani Consulting Inc.

8.  PRICE- The purchase price is a unit price contract and the quantities mentioned is just an approximate quantity which could change depending on the Project Owner and includes payment to the Subcontractors for all its obligations under this Purchase Order. In addition, the purchase price includes all taxes applicable to the Work.

9.  TERMS OF PAYMENT- Payment of the Subcontractors invoices shall be made within ten (10) business days of receipt by Hirani Consulting Inc. of payment from the Project Owner/Client/Prime Contractors. Payment by the Project Owner shall be an absolute condition precedent to Hirani Consulting Inc.'s obligation to pay the Subcontractors for the Work, regardless of the length of any delay incurred while awaiting payment from the Project Owner. Prior to payment, the Subcontractors shall execute and furnish all lien waivers, affidavits and other documents required to keep the Project free from mechanic's liens or charges. Any payment discount period shall be calculated from the date when Hirani Consulting Inc. receives an acceptable invoice.

10  INSPECTION- Upon one day's notice to the Subcontractors, Hirani Consulting Inc. may inspect, test and take samples of the Work, wherever located.

11  DEFAULT; REMEDIES- If the Subcontractors breach this Purchase Order, or if the Subcontractors dissolve, is liquidated, or is placed in bankruptcy, receivership or assignment for the benefit of creditors, Hirani Consulting Inc. may without notice, declares the Subcontractors in default under this Purchase Order. Upon default, Hirani Consulting Inc. may, without notice, (a) cancel this Purchase Order without cost to Hirani Consulting Inc., (b) require that all sums owing to Hirani Consulting Inc. be immediately paid and (c) seek any other remedy available under this Purchase Order and applicable law. In any action for breach of this Purchase Order, Hirani Consulting Inc. shall be entitled to its reasonable counsel fee and expenses.

12  NON-CONFORMING WORK- If the work does not conform to the terms of this Purchase Order, Hirani Consulting Inc. (a) Hold the Work for Subcontractor's instruction at Subcontractor's risk and expense (b) remedy the defects to the Work at Subcontractor's expense (c) require replacement of the Work at no additional cost or (d) sets off all costs and expenses incurred by making an equitable reduction in the price. Further, if the Subcontractors provides on conforming work or fails to perform the work, Hirani Consulting Inc. may in addition to other rights, procure the Work elsewhere. The Subcontractors shall pay any additional cost of reprocurement. If reprocurement causes direct or consequential damages to Hirani Consulting Inc., the Subcontractors shall reimburse Hirani Consulting Inc. for these damages, in all case, the Subcontractors shall pay the costs of inspection and testing of the Work and all transportation, storage and other charges.

13  RISK OF LOSS- Until final acceptance of all Work Contactor shall responsible for all damages to the Work, except damage resulting from the willful acts on Hirani Consulting Inc.

14  DISPUTES- The Subcontractors is bound by the provisions of the Prime Contract, if any, requiring arbitration of disputes. Further, the Subcontractors agree to participate in and be bound by any arbitration under the Prime Contract. If the Prime Contract does not provide for any arbitration, or if any applicable arbitration provision has been waived, Hirani Consulting Inc. may elect, in its sole discretion, to commit disputes under this Purchase Order to arbitration, and the Subcontractors agrees to be bound by Hirani Consulting Inc.'s election and the subsequent arbitration.

15  CUMULATIVE REMEDIES-Hirani Consulting Inc.'s various rights and remedies under this Purchase Order and applicable law are cumulative.

16  SETFOFF- All amounts owed to the Subcontractors by Hirani Consulting Inc. this Purchase Order may be set-off, at Hirani Consulting Inc.'s option, against any amount otherwise owed to Hirani Consulting Inc. by the Subcontractors.

17  COMPLIANCE WITH LAW- The Subcontractors shall comply with all applicable provisions of federal, state, local, labor laws, payment of prevailing wages and regulations.

18  ASSIGNMENT-This Purchase Order may not be assigned, transferred or hypothecated by the Subcontractors without Hirani Consulting Inc.'s prior written approval.

19  GOVERNING LAW-This Purchase Order shall be governed by the laws of the State of New York.

20  MODIFICATION- This Purchase Order may not be modified orally. All modifications must be in writing and signed by Hirani Consulting Inc. and the Subcontractors.

21  MERGER-This Purchase Order is the complete expression of the agreement between Hirani Consulting Inc. and the Supplier. No prior statements, course of dealings, trade usage, custom, or practice shall supplement the terms this Purchase Order.

22  INSURANCE- Before commencing any work hereunder, Subcontractors shall procure and maintain, at its own expense, until completion of the work all the insurances as per the specifications. Before commencing the Work, the Subcontractors shall furnish a certificate, satisfactory to Hirani, from each insurance company showing that the above insurance is in force, stating policy numbers, dates of expiration, and limits of liability there under, and further providing that the insurance will not be canceled or changed until the expiration of at least thirty (30) days after written notice of such cancellation or change has been mailed to and received by Hirani. If requested by Hirani, Subcontractors shall provide proof that said insurance is paid for and full force and effect. Hirani and the Owner shall be named as additional insured under these policies of insurance. If the Subcontractors fails to maintain such insurance, Hirani shall have the right, but not the obligation, to procure and maintain such insurance for and in the name of the Subcontractors and the Subcontractors shall pay the cost thereof.

23  LOSS OR DAMAGE TO WORK- Hirani shall not be responsible for any loss or damage to the Work to performed and furnished under this Subcontractors, however caused. Hirani shall not be responsible for loss of or damage to materials, tool, equipment or any other personal property owned, rented or used by the Subcontractors or anyone employed by it in the performance of the work, however caused.

24  BACKCHARGES- Any equipment, tools, services or materials purchased by or supplied by Hirani to Subcontractors shall be charged to Subcontractors by Hirani at Hirani's cost plus a handling charge of ten percent (10%). Any trucking required for delivery or pickup of any of the above or for removal of debris or for any other reason shall be charged at the rate of $800 per trip plus a handling charge of ten percent (10%). Any labor required that is supplied by Hirani in order to complete any portion of the work or due to the failure of the Subcontractors on the Work and adhere to the Project schedule shall be charged at Hirani's standard time and material rated plus a handling charge of ten percent (10%).Any and all equipment supplied by Hirani shall be charged to Subcontractors at Hirani's standard time and material rates plus a handling charge of ten percent (10%). If Hirani supplies any equipment to the Subcontractors, Subcontractors is required to return any such equipment in the same condition as it was delivered by Hirani. Any repairs required to said equipment upon its return, Hirani shall back charge to Subcontractors at cost plus a handling charge of ten percent (10%). Should Subcontractors receive any violations or summonses during the course of the Work, Hirani may elect to defend same at Subcontractor's expense and Subcontractors shall be responsible for the payment of any fine imposed plus actual legal costs incurred by Hirani.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the effective date of the contract first above written.

Hirani Engineering & Land Surveying, P.C.
Name:  Naresh  Ochani

Title: Project Manager

Signed: .........................

MPI Mechanical Inc.
Name:  _R I C H A R D. A. M E N T R N J M_

Title: _P.R.E.S.I.D.E.N.J._

Signed: _Richard A. Mentrosm_

Page 2 of 3

# HIRANI ENGINEERING AND LAND SURVEYING, P.C.

**PURCHASE ORDER # 108**

370 Campus Drive
Suite 113A
Somerset, NJ 08873
(732) 564-0164     Fax- (732) 564-0167

To: Richard Menton
MPI Mechanical
11 McMillan way
Newark, DE 19713
Phone: (302)368-3210
Fax: (302)737-8412

Date: 03/05/07
Project:  Standard Chlorine of Delaware,
New Castle, DE

**WORK AT**
745 Governor Lea Road
New Castle, DE 19720

**BILL TO:**
Hirani Engineering &
Land Surveying, P.C.
370 Campus Drive
Somerset, NJ 08873

TERMS: Five (5) business days of receipt of payment from the Project Owner/Client to Hirani Engineering and Land Surveying, P.C.

**DESCRIPTION**

*BATHROOM IS EXCLUDED (RAM 3-7-07)*

- Furnish and install mechanical and plumbing items per drawings and specifications.

- Interconnect tanks and skids for process system, using welded 316 stainless steel pipe where shown, 8 inch flexible SS duct (chimney liner) where shown, SCH 80 PVC pipe where shown, Cut sheets on tanks and skids included for information.

- Provide all submittals.

- Buy America for all materials to be used.

- Furnish and install 200 ft. of SCH 80 PVC pipe for discharge including excavation and backfilled as per attached trench detail. Drawing and detail included. 4" to 8" Riprap at discharge end to prevent erosion.

- Schedule: begin Mar. 7, 2007, finish Mar. 23, 2007

## TOTAL COST - $89,700

RETAINAGE PETCENTAGE: For the security of faithful performance of this contract, as per the owner, the contractor shall deduct 10% of the value of Work certified for payment to the Subcontractor in each partial payment voucher.
Note:- This is your authorization to perform the following Work (i.e. labor, materials and equipment) including shop drawings, submittal as per the plans and specifications for this contract and subject to the terms and conditions of this Purchase Order appended hereto.
This contract is a prevailing wage contract. The contract price includes payroll taxes, workmen compensation and insurance. Any expense incurred by the Prime Contractor will be deducted from the contract value.

Sub-Total: $89,700
Lump Tax: Included
Freight: Included
Total: $89,700

Page 1 of 4

TERMS AND CONDITIONS

The Subcontractors acknowledges that the work identified in this Purchase Order to Hirani Engineering & land Surveying (the "Work") have no value to Hirani Engineering & land Surveying, unless they contest the requirements of Hirani Engineering & land Surveying agreement with the Project Owner, including the plans and specifications (Collectively, the Prime Contract). The Subcontractors accepts the following terms and conditions Hirani Engineering & land Surveying, receives payment for the Work under the "Prime Contract". Based on these considerations, the Subcontractors accepts the following terms and conditions without qualification.

1. ACCEPTANCE- the Subcontractors may accept this offer only by signing and returning this Purchase Order to Hirani Engineering & land Surveying without modification, within three days.

2. CANCELLATION- Hirani Engineering & land Surveying. may cancel this Purchase Order, without cost, if (a) Hirani Engineering & land Surveying. is not award the Prime Contract, (b) the Project Owner does not approve the Subcontractors or the Work. (c) the Project Owner does not approve the material (d) the Project Owner changes the system/material to be used on the project or (d) the Subcontractors fails to comply with each term of this Purchase Order. Hirani Engineering & land Surveying may also cancel this Purchase Order for its own convenience. In that case Hirani Engineering & land Surveying liability shall be limited to payment, at the prices set forth in this Purchase Order, for that portion of the work which had been manufactured/serviced by the date of termination and which do not constitute stock or standard items.

3. PRIME CONTRACT- The Prime Contract is incorporated into this Purchase Order and shall be made available, upon reasonable notice, to the Subcontractors for examination. The Subcontractors assumes toward Hirani Consulting Inc. each obligation and liability that Hirani Consulting Inc. assumes toward the Project Owner under the Prime Contract.

4. SCHEDULE- Times is of essence. The Subcontractors shall submit all shop drawings, site safety inspection/plan, CPM schedules, samples and product data promptly and shall obtain the required approvals at such time as will permit the Subcontractors to meet the delivery dates. All delivery dates are subject to reasonable revision by Hirani Consulting Inc., as necessary to meet the project schedule, and the Subcontractors shall meet these revised dates at no additional expense to Hirani Consulting Inc. The Subcontractors acknowledges that any delay in the performance of the Work may results in damages to Hirani Consulting Inc., including liability by Hirani Consulting Inc. to others, and agrees to compensate Hirani Consulting Inc. for all direct and consequential damages as a result of the delay.

5. CHANGES- Hirani Consulting Inc. may change or modify the plans and specification for the Work under the Prime Contract. In the event such changes or modifications, this purchase order shall remain in full force and effect, except that it shall be adjusted in a similar manner and the Purchase Order Adjusts amount as the Prime Contract. This adjustment, if any, shall constitute the only compensation to the Subcontractors as a result of changes or modifications.

6. WARRANTIES- The Subcontractors warrants that the Work (a) Comply with all applicable requirements of the Prime Contract, (b) are free from all defects in workmanship and materials, (c) comply with all warranties imposed by law, (d) comply with all applicable laws, regulations, and codes (e) conform to all samples, shop drawings, site safety inspection/plan, CPM schedules and product data furnished by the Subcontractors, (f) are merchantable and suitable for the use contemplated by the Prime Contract and (g) if designed by the Subcontractors, are free from defects in design. The Subcontractors agrees to remedy any defect in the Work within one year from acceptance by the Project Owner, or within the applicable period established by the Prime Contract, whichever is longer. The Subcontractor's warranties shall survive acceptance of the Work and shall not be waived by any failure to notify the Subcontractors of any non-conformity.

7. INDEMNIFICATION- Subcontractors agrees to defend, protect, indemnify and hold harmless the Owner and Hirani Engineering & land Surveying their respective officers, directors, employees, agents, invitees, and servants (collectively, "Indemnities") from and against each and every claim, demand or cause of action or any liability, cost, expense (including but not limited to reasonable attorney's fees and expenses incurred in the defense of the indemnities, damage or loss in connection therewith, which may be made or asserted by the Subcontractors, Subcontractor's employees or agents, Subcontractors, their employees or agents or any third parties (including but not limited to the Indemnities) on account of personal injury or death or property damage caused by or alleged to be caused by, arising out of, or in anyway incidental to, or in connection with the performance of the Work hereunder and undertakings of the Subcontractors of all work, labor and services including the supply of materials, equipment, tools and services as provided for in the contract between Hirani Consulting Inc. and Subcontractors and the agreement between the Owner and Hirani Engineering & land Surveying

8. PRICE- The purchase price is a unit price contract and the quantities mentioned is just an approximate quantity which could change depending on the Project Owner and includes payment to the Subcontractors for all its obligations under this Purchase Order. In addition, the purchase price includes all taxes applicable to the Work.

9. TERMS OF PAYMENT- Payment of the Subcontractors invoices shall be made within ten (10) business days of receipt by Hirani Engineering & land Surveying of payment from the Project Owner/Client/Prime Contractor. Payment by the Project Owner shall be an absolute condition precedent to Hirani Engineering & land Surveying obligation to pay the Subcontractors for the Work, regardless of the length of any delay incurred while awaiting payment from the Project Owner. Prior to payment, the Subcontractors shall execute and furnish all lien waivers, affidavits and other documents required to keep the Project free from mechanic's liens or charges. Any payment discount period shall be calculated from the date when Hirani Engineering & land Surveying. receives an acceptable invoice.

10. INSPECTION-Upon one day's notice to the Subcontractors, Hirani Engineering & land Surveying, may inspect, test and take samples of the Work, wherever located.

11. DEFAULT; REMEDIES- If the Subcontractors breach this Purchase Order, or if the Subcontractors dissolve, is liquidated, or is placed in bankruptcy, receivership or assignment for the benefit of creditors, Hirani Consulting Inc. may without notice, declares the Subcontractors in default under this Purchase Order. Upon default, Hirani Consulting Inc. may, without notice, (a) cancel this Purchase Order without cost to Hirani Consulting Inc., (b) require that all sums owing to Hirani Engineering & land Surveying be immediately paid and (c) seek any other remedy available under this Purchase Order and applicable law. In any action for breach of this Purchase Order, Hirani Engineering & land Surveying. shall be entitled to its reasonable counsel fees and expenses.

12. NON-CONFORMING WORK- if the work does not conform to the terms of this Purchase Order, Hirani Engineering & land Surveying: (a) Hold the Work for Subcontractor's instruction at Subcontractor's risk and expense (b) remedy the defects in the Work at Subcontractor's expense (c) require replacement of the Work at no additional cost or (d) set off all costs and expenses incurred by making an equitable reduction in the price. Further, if the Subcontractors provides non conforming work or fails to perform the work, Hirani Consulting Inc. may in addition to other rights, procure the Work elsewhere. The Subcontractors shall pay any additional cost of reprocurement. If reprocurement causes direct or consequential damages to Hirani Engineering & land Surveying the Subcontractors shall reimburse Hirani for these damages, in all case, the Subcontractors shall pay the costs of inspection and testing of the Work and all transportation, storage and other charges.

13. RISK OF LOSS– Until final acceptance of all Work Contractor shall responsible for all damages to the Work, except damage resulting from the willful acts on Hirani Engineering & land Surveying

14. DISPUTES- The Subcontractors is bound by the provisions of the Prime Contract, if any, requiring arbitration of disputes. Further, the Subcontractors agree to participate in and be bound by any arbitration under the Prime Contract. If the Prime Contract does not provide for any arbitration, or if any applicable arbitration provision has been waived, Hirani Engineering & land Surveying may elect, in its sole discretion, to commit disputes under this Purchase Order to arbitration, and the Subcontractors agrees to be bound by Hirani Engineering & land Surveying election and the subsequent arbitration.

15. CUMULATIVE REMEDIES- Hirani Consulting Inc.'s various rights and remedies under this Purchase Order and applicable law are cumulative.

16. SETOFF- All amount owed to the Subcontractors by Hirani Consulting Inc. by this Purchase Order may be set-off, at Hirani Engineering & land Surveying option, against any amount otherwise owed to Hirani Consulting Inc. by the Subcontractors.

17. COMPLIANCE WITH LAW- The Subcontractors shall comply with all applicable provisions of federal, state, local, labor laws, payment of prevailing wages and regulations.

18. ASSIGNMENT-This Purchase Order may not be assigned, transferred or hypothecated by the Subcontractors without Hirani Engineering & land Surveying prior written approval.

19. GOVERNING LAW-This Purchase Order shall be governed by the laws of the State of New York.

20. MODIFICATION- This Purchase Order may not be modified orally. All modifications must be in writing and signed by Hirani Engineering & land Surveying and the Subcontractors.

21. MERGER-This Purchase Order is the complete expression of the agreement between Hirani Engineering & land Surveying, and the Supplier. No prior statements, course of dealings, trade usage, custom, or practice shall supplement the terms this Purchase Order.

22. INSURANCE- Before commencing any work hereunder, Subcontractors shall procure and maintain, at its own expense, until completion of the work all the insurances as per the specifications. Before commencing the Work, the Subcontractors shall furnish a certificate, satisfactory to Hirani, from each insurance company showing that the above insurance is in force, stating policy numbers, dates of expiration, and limits of liability there under, and further providing that the insurance will not be canceled or changed until the expiration of at least thirty (30) days after written notice of such cancellation or change has been mailed to and received by Hirani. If requested by Hirani, Subcontractors shall provide proof that said insurance is paid for and full force and effect. Hirani and the Owner shall be named as additional insured under these policies of insurance. If the Subcontractors fails to maintain such insurance, Hirani shall have the right, but not the obligation, to procure and maintain such insurance for and in the name of the Subcontractors and the Subcontractors shall pay the cost thereof.

23. LOSS OR DAMAGE TO WORK- Hirani shall not be responsible for any loss or damage to the Work to performed and furnished under this Subcontractors, however caused. Hirani shall not be responsible for loss of or damage to materials, tool, equipment or any other personal property owned, rented or used by the Subcontractors or anyone employed by it in the performance of the work, however caused.

24. BACKCHARGES- Any equipment, tools, services or materials purchased by or supplied by Hirani to Subcontractors shall be charged to Subcontractors by Hirani at Hirani's cost plus a handling charge of ten percent (10%). Any trucking required for delivery or pickup of any of the above or for removal of debris or for any other reason shall be charged at the rate of $800 per trip plus a handling charge of ten percent (10%). Any labor required that is supplied by Hirani in order to complete any portion of the work; or due to the failure of the Subcontractors to man the Work and adhere to the Project schedule shall be charged at Hirani's standard time and material rated plus a handling charge of ten percent (10%).Any and all equipment supplied by Hirani shall be charged to Subcontractors at Hirani's standard time and material rates plus a handling charge of ten percent. If Hirani supplies any equipment to the Subcontractors, Subcontractors is required to return any such equipment in the same condition as it was delivered by Hirani. Any repairs required to said equipment upon its return, Hirani shall back charge to Subcontractors at cost plus a handling charge of ten percent (10%). Should Subcontractors receive any violations or summonses during the course of the Work Hirani may elect to defend same at Subcontractor's expense and Subcontractors shall be responsible for the payment of any fine imposed plus actual legal costs incurred by Hirani.

Page 2 of 4

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the effective date of the contract first above written.

Hirani Engineering & Land Surveying, P.C.

Name:   Naresh  Ochani

Title: Project Manager

Signed: ..........................

MPI Mechanical Inc.

Name: _RICHARD. A. MENTON_ III

Title: _P.R.E.S.I.D.E.N.T_..........

Signed: _Richard Menton_ III

Page 3 of 4

# EXHIBIT D

FILE

John J. Graham, Jr.
Attorney At Law

COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC

United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 19103
T: 215.564.1700 I F: 267.238.4445
jgraham@cohenseglias.com
www.cohenseglias.com

July 23, 2007

**Via Certified Mail, Return Receipt Requested**
**(tracking #70062150000476769723)**
Westchester Fire Insurance Company
140 Broadway
New York, NY 10005

    **RE: Standard Chlorine of Delaware Site-Ground Water Extraction and Treatment System**
        **Hirani Engineering and Land Surveying, P.C.**
        **Bond No.: K07284937**

To Whom It May Concern:

    This firm serves as counsel to MPI Mechanical, Inc. ("MPI"). Westchester Fire Insurance Company ("Westchester") issued payment bond number K07284937 relating to the Standard Chlorine of Delaware Site-Ground Water Extraction and Treatment System Project, located in Delaware City, Delaware (the "Project"). A copy of the payment bond is attached to this letter for your reference.

    Westchester's bond principal, Hirani Engineering and Land Surveying, P.C. ("Hirani"), and Hirani's subcontractor, MIG Environmental ("MIG"), engaged MPI to perform certain work at the Project. MPI performed and continues to perform its work at the Project pursuant to the terms of its agreement with Hirani and MIG. While MPI continues to perform work at the Project, Hirani and MIG are delinquent in remitting payment to MPI. The total amount that is currently outstanding and due to MPI is $413,579.63. Please accept this letter as MPI's Notice of Non-Payment pursuant to Article 4 of the above-referenced payment bond.

    If payment in the above amount is not paid within the next thirty (30) days, MPI has instructed this firm to exercise MPI's rights under the payment bond.

Westchester Fire Insurance Company
July 23, 2007
Page 2

_____

      If you have any questions or comments with respect to the foregoing, please do not hesitate to contact me.

                            Very truly yours,

                            **Cohen, Seglias, Pallas, Greenhall & Furman, P.C.**

                            John J. Graham

JJG:db
cc:    Black & Veatch Special Projects Corp.
        Hirani Engineering and Land Surveying, P.C.

# EXHIBIT E

John J. Graham, Jr.
Attorney At Law

**COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC**

United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 19103
T: 215.564.1700 I F: 267.238.4445
jgraham@cohenseglias.com
www.cohenseglias.com

August 21, 2007

<u>**Via Certified Mail, Return Receipt Requested**</u>
   *(tracking #70032260000044501709)*
Hirani Engineering & Land Surveying, P.C.
370 Campus Drive, Suite 113A
Somerset, NJ 08873

RE:     **Notice of Intent to File Miller Act Claim**
   **Claimant:     MPI Mechanical, Inc.**
   **Project:     Standard Chlorine of Delaware Site-Ground Water Extraction**
           **and Treatment System**

To Whom It May Concern:

   This firm serves as corporate counsel to MPI Mechanical, Inc. ("MPI").  As you are aware, MPI is a mechanical and plumbing contractor that performed work on the above-referenced project.  MPI has a direct contractual relationship with Hirani Engineering & Land Surveying, P.C. ("Hirani"), as well as Hirani's subcontractor, MIG Environmental.  This correspondence will serve as MPI's formal notice under the Miller Act, 40 U.S.C. §3133, of its intent to make a claim against the payment bond issued by your surety, Westchester Fire Insurance Company.

   MPI provided labor and materials at the project at the direction of Hirani and MIG.  An unpaid balance of $271,173.11 remains due and owing to MPI for work directed and approved by Hirani.  Similarly, an unpaid balance of $135,428.92 remains due and owing to MPI for work directed and approved by Hirani's subcontractor, MIG.  Despite numerous requests for payment, neither Hirani nor MIG have remitted payment to MPI.  Accordingly, MPI intends to make a claim against the payment bond issued by your surety pursuant to the Miller Act if this matter is not resolved immediately.

   Should you have any questions or comments with respect to the foregoing, please do not hesitate to contact me.

Philadelphia  I  Pittsburgh  I  Wilmington
Harrisburg  I  New Jersey

Hirani Engineering & Land Surveying, P.C.
August 21, 2007
Page 2

Very truly yours,

**Cohen, Seglias, Pallas, Greenhall
& Furman, P.C.**

John J. Graham

JJG:db
cc:    Hirani Engineering & Land Surveying, P.C. *(New York Office, via Certified Mail, RRR)*
       Black & Veatch Special Projects Corp.
       MIG Environmental
       Westchester Fire Insurance Company

# EXHIBIT F

John J. Graham, Jr.
**Attorney At Law**

**COHEN SEGLIAS PALLAS GREENHALL &FURMAN PC**

United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 19103
T: 215.564.1700 I F: 267.238.4445
jgraham@cohenseglias.com
www.cohenseglias.com

September 7, 2007

<u>**Via Certified Mail, Return Receipt Requested**</u>
 *(tracking #70062760000548055168)*
Westchester Fire Insurance Company
140 Broadway
New York, NY 10005

    **RE: Standard Chlorine of Delaware Site-Ground Water Extraction and Treatment System**
       **Hirani Engineering and Land Surveying, P.C.**
       **Bond No.:  K07284937**

To Whom It May Concern:

      As you are aware, this firm serves as counsel to the MPI Mechanical, Inc. ("MPI").  On July 23, 2007, MPI provided Westchester Fire Insurance Company ("Westchester") with Notice of Non-Payment pursuant to Article 4 of the above-referenced Payment Bond.  As set forth in MPI's July 23, 2007 Notice, Westchester's bond principal, Hirani Engineering and Land Surveying, PC. ("Hirani"), and Hirani's subcontractor, MIG Environmental ("MIG"), engaged MPI to perform work at the above-referenced project.  Although MPI properly performed its work at the project pursuant to its Agreements with Hirani and MIG, and outstanding balance in excess of $413,579.63 remains due and owing to MPI.

      Westchester has failed to provide any response to MPI's July 23, 2007 letter.  Therefore, Westchester is in breach of its obligations under Article 6 of the Payment Bond.  Accordingly, MPI is moving forward to enforce its rights under the terms of the Bond.

      Should you have any questions or comments with respect to the foregoing, please do not hesitate to contact me.

          Very truly yours,

          **Cohen, Seglias, Pallas, Greenhall**
          **& Furman, P.C.**

          John J. Graham

JJG:db
cc:    Black & Veatch Special Projects Corp.
       Hirani Engineering and Land Surveying, P.C.

Philadelphia I Pittsburgh I Wilmington
Harrisburg I New Jersey

℀JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States, for the Use and Benefit of, MPI Mechanical, Inc. and MPI Mechanical, Inc.

**(b)** County of Residence of First Listed Plaintiff ___New Castle County___
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Edward Seglias, Esquire - Cohen Seglias (302) 425-5089
1007 N. Orange St., Suite 1130, Wilmington, DE 19801

## DEFENDANTS

Westchester Fire Insurance Co., MIG Environmental, Hirani Engineering and Land Surveying, P.C.

County of Residence of First Listed Defendant ___New York County, NY___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☒ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 240 Torts to Land | ☐ 444 Welfare | **PRISONER PETITIONS** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Habeas Corpus:** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | | ☐ 440 Other Civil Rights | ☐ 530 General | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | | ☐ 535 Death Penalty | | |
| | | | ☐ 540 Mandamus & Other | | |
| | | | ☐ 550 Civil Rights | | |
| | | | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
40 U.S.C. 3133

Brief description of cause:
Failure to pay for labor and material provided on a public project

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
in excess of $400,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
9.7.07

SIGNATURE OF ATTORNEY OF RECORD
_[signature]_

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____